IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CAPITAL CITY ENERGY GROUP, INC.,** *et al.* | : : : | |
| Plaintiffs, | : : | |
| v. | : : : | Case No. 2:11-cv-00207 |
| **KELLEY DRYE & WARREN LLP,** *et. al.* | : : | **JUDGE ALGENON L. MARBLEY** Magistrate Judge Norah McCann King |
| Defendants. | : : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This diversity action[1] is before the Court on Defendants Kelley Drye & Warren, LLP, and Timothy Lavender's Motion to Dismiss Plaintiffs' Complaint. Kelley Drye & Warren, LLP and Timothy Lavender (collectively, "KDW") move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that Plaintiffs Capital City Energy Group, Inc. ("CCEG") and its subsidiary Hotwell Services, Inc. are foreign corporations that are not licensed to do business in Ohio and thus lack the capacity to sue. For the reasons that follow, the Court **DENIES** KDW's motion.

**II. BACKGROUND**

KDW is a New York limited liability partnership with a national law practice. Plaintiffs retained KDW's Chicago, Illinois office to provide legal services. KDW and KDW partner, Timothy Lavender, represented Plaintiffs from approximately 2008 until 2010. During that time,

---

[1]The basis for federal jurisdiction over Plaintiff's claims is diversity of citizenship. *See* 28 U.S.C. § 1332. Generally, state law supplies the rules of decision in federal diversity cases. 28 U.S.C. § 1652; *see Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78; *O-So Detroit, Inc. v. Home Ins. Co.,* 973 F.2d 498, 501 n. 3 (6th Cir. 1992).

KDW provided legal assistance to Plaintiffs in Ohio. Due to alleged business failures, including KDW's failure to license Plaintiffs in Ohio as a foreign corporation, Plaintiffs' relationship with KDW dissolved.

This is an action for legal malpractice. Plaintiffs commenced this action in state court on January 31, 2011, and KDW removed the case to this Court based on the Parties' complete diversity of citizenship. CCEG is a Nevada corporation with its principal place of business in Ohio. Hotwell is a Delaware corporation with its principal place of business in Pennsylvania.

It is undisputed that at the time Plaintiffs filed their Complaint, neither CCEG nor Hotwell had obtained a license to transact business in Ohio as a foreign corporation. It is also undisputed that Plaintiffs have since remedied the situation by acquiring all the appropriate licensure to transact business in Ohio. KDW moves for dismissal of this case arguing that Plaintiffs lacked the capacity to sue when this action was commenced and that lack of capacity to sue cannot be cured after a complaint is filed.

### III. STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Iqbal,* 129 S.Ct. at 1949–50; *Erickson v. Pardus,* 551 U.S. 89, 93–94 (2007); *Twombly,* 550 U.S. at 555–56. Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion

to dismiss. *Twombly*, 550 U.S. at 555–56; *Allard v. Weitzman,* 991 F.2d 1236, 1240 (6th Cir. 1993).

In federal courts, "a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted may properly be utilized to assert a defense of lack of capacity to sue." *Weiner v. Winters*, 50 F.R.D. 306, 307-08 (S.D.N.Y. 1970) (citing 2A Moore's Federal Practice ¶12.07, note 13 at 2263 (2d ed. 1968); *Klebanow v. New York Produce Exchange*, 344 F.2d 294 (2d Cir. 1965)).

## IV. LAW AND ANALYSIS

### A. Diversity Jurisdiction

At issue in this case is whether a previously unlicensed corporation that became licensed after bringing an action in court can maintain that action. This matter is before the Court on diversity. "In diversity cases, the federal courts must apply state law 'in accordance with the then controlling decision of the highest state court.'" *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001) (quoting *United States v. Anderson County, Tennessee,* 761 F.2d 1169, 1173 (6th Cir. 1985)). This Court must therefore apply Ohio law. The Ohio Supreme Court, however, has not ruled on the issue before this Court. Where a state's highest court has not spoken on a precise issue, a federal court must determine what a state's highest court would decide. *See Ziegler*, 249 F.3d at 517 (citing *Bailey v. V & O Press Co.,* 770 F.2d 601, 604 (6th Cir.1985)).

To determine what a state's highest court would decide on an issue, "'the federal court must ascertain from all available data, including the decisional law of the state's lower courts, restatements of law, law review commentaries, and decisions from other jurisdictions on the 'majority' rule.'" *Am. and Foreign Ins. Co. v. Bolt,* 106 F.3d 155, 158 (6th Cir.1997) (quoting *Grantham and Mann v. American Safety Prods., Inc.,* 831 F.2d 596, 608 (6th Cir. 1987)).

Additionally, in determining how a state's highest court would rule, a federal court "'may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Ziegler*, 249 F.3d at 517 (quoting *Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1485 (6th Cir. 1989)).

### B. Lack of Capacity to Sue

KDW contends Plaintiffs lack the legal capacity to sue because Plaintiffs were unlicensed at the time they filed this action in violation of Ohio Revised Code ("O.R.C.") § 1703.29(A). O.R.C. §1703.29(A) provides as follows: "[N]o foreign corporation which should have obtained such license shall maintain any action in any court until it has obtained such license."[2] KDW argues that dismissal is appropriate in this case because Plaintiffs cannot retroactively cure the mistake of failure to acquire the proper licensing, which is required to sue.

KDW relies on *P.K. Springfield, Inc. v. Hogan,* 621 N.E.2d 1253, 1256 (Ohio Ct. App. 1993) as the leading state court case on the issue of whether a corporation can retroactively cure its failure to obtain a license. In *Hogan*, plaintiff P.K. Springfield ("PK") sought foreclosure of its lien on a piece of property and the marshaling of all other liens. *Id.* at 1255. PK named defendant Miles Homes Inc. ("Homes") as holding such liens. *Id.* Homes was an unlicensed corporation at the time PK commenced the action. *Id.* Homes asserted counter claims against PK, declaring that it held the first and only recoverable lien. *Id.* PK raised the issue of lack of capacity to sue in its answer, but filed no motion to dismiss. *Id*. The trial court granted summary judgment in favor of Homes.[3] *Id.* Homes then moved to join additional lienholders as parties. *Id.* At that time, PK raised the issue of licensing, arguing that Homes lacked the capacity to maintain

---

[2] Although Rule 17(b) of the Federal Rules of Civil Procedure provides that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized," it does not govern a corporation's capacity to sue in diversity cases. *See Angel v. Bullington*, 330 U.S. 183 (1947).
[3] The trial court granted summary judgment to Homes two times in this case. It vacated its first order because Homes failed to serve process on the homeowners.

4

the action because Homes had not obtained the proper license at the time it had filed its counter claim, even though Homes had obtained the proper license when PK raised this issue. *Id.* The trial court agreed with PK, nullified its prior summary judgment ruling, and excluded Homes from the distribution of proceeds. *Id.*

Homes appealed the trial court's order. *Id.* at 1256. The appellate court found that Homes did violate O.R.C. § 1703.29 but that the time to raise the defense had passed. *Id.* at 1257. The appellate court held that at summary judgment, the issue of lack of capacity to sue had already become moot and that PK had waived the defense. *Id.* at 1258. The court concluded, "the unlicensed status of . . . Homes did not warrant any action by the trial court because the defense was waived by the original parties to the action and rendered moot by the time additional parties were joined in the action." *Id.*

Some Ohio courts have read the decision in *Hogan* to stand for the proposition that licensure cannot be retroactively cured. *See Quality International Enterprises, Inc. v. IFCO Systems North America Inc.*, 2006 WL 3208589 at *2–3 (Ohio App. 3d Dist. 2006); *L & W Supply Co., Inc. v. Constr. One, Inc.*, No. 5-99-55 2000 WL 348990 at *4 (Ohio App. 9th Dist 2006). This Court, however, is not persuaded that the Ohio Supreme Court would rule in accordance with this line of cases for the following reasons: (1) *Hogan* has been misinterpreted and is distinguishable from this action; (2) O.R.C. § 1703.29(A) is not meant to deny unlicensed foreign corporations access to Ohio courts; (3) the majority of other jurisdictions have ruled that dismissal would be inappropriate in an action such as this; and (4) dismissal would not serve the interest of judicial economy.

First, *Hogan* has been misinterpreted to stand for the proposition that a corporation can never retroactively cure its failure to obtain a license. The holding in *Hogan* is that PK waived the

5

defense of lack of capacity to sue at the summary judgment stage and that the issue of licensing was moot. *See* 621 N.E.2d at 1258. In *Hogan,* the court ruled in favor of defendant Homes who had obtained a license after commencing an action. *Id*. In making its decision, the court found that "[O.R.C.§] 1703.29(A) required . . . Homes to obtain a license in order to maintain its cross-claim." *Id*. at 1257.

This statement has been misinterpreted to stand for the proposition that an unlicensed corporation cannot retroactively cure its failure to obtain a license. *See Quality International Enterprises, Inc*., 2006 WL 3208589 at *2 ("'[O.R.C. §] 1703.29(A) require[s] [the defendant] to obtain a license in order to maintain its cross-claim.'") (quoting *Hogan*, 621 N.E.2d at 1257). In *Hogan*, however, the court did not make any dispositive statement as to whether a corporation can retroactively cure its failure to obtain a license. Indeed, *Hogan* stands for the opposite proposition. In recognizing that O.R.C. § 1703(A) was violated and that the statute does not expressly provide an exception in cases where the corporation acquires a license at any time after it commences the action, the court explained:

> [T]hat is not to say that a trial court should dismiss every case in which an unlicensed corporation fails to obtain the necessary license until sometime during the course of the action. Rather, if the adverse party fails to object to the unlicensed status of the corporation until after that corporation has obtained the necessary license, the defense of a failure to obtain the necessary license is rendered moot.

621 N.E.2d at 1258. The *Hogan* court did not hold that every violation of O.R.C. § 1703.29(A) requires dismissal of an action, only that dismissal is appropriate when a corporation is not licensed at the time the issue of lack of capacity to sue is raised. In the case *sub judice*, Plaintiffs violated O.R.C. § 1703.29(A) when they filed this action; however, Plaintiffs have since obtained a license, and the defense of a failure to obtain a license is rendered moot.

6

The Court recognizes that KDW filed its motion to dismiss before Plaintiffs had obtained the proper license to transact business in Ohio. In finding that the issue of licensing is moot, the Court does not find that KDW waived the defense of lack of capacity to sue. As discussed previously, O.R.C. § 1703(A) prohibits a corporation from "maintain[ing] any action . . . until it has obtained such license." Plaintiffs maintained an action when they filed their complaint, violating O.R.C. § 1703.29(A). The word "until" however, is significant. *See Dieter Eng'g Serv., Inc. v. Parkland Dev., Inc.*, 483 S.E.2d 48, 54 (W. Va. Sup. Ct. 1996) (finding significant the function of the word "until" in an identical statute). The word "until" is defined as "up to the time that: til such time as," and is "used as a function word to indicate continuance (as of an action, condition or state) up to a particular time." *Webster's Third International Dictionary* 2513 (1993). The meaning of the word "until" provides an inference that a proceeding may be continued once a foreign corporation obtains a license. The word "until" also creates a dichotomy between the period when the issue of failure to obtain a license exists and when it is moot. Once a corporation obtains a license, the issue of failure to obtain a license is moot.

Plaintiffs remedied the issue of licensure during the pendency of this proceeding. Plaintiffs have obtained the proper licensing and did so by the time it filed its Memorandum in Opposition to KDW's Motion to Dismiss. By the time KDW's motion was ripe, then, the issue of failure to obtain a license was moot. *Cf. Ferron v. Search Cactus, L.L.C.*, No. 206-CV-327, 2007 WL 1792331 at *3 (S.D. Ohio June 19, 2007) ("This Court should not dismiss the present case because Defendant *has already complied* with the state's registration requirement for foreign limited liability companies. The very basis of Plaintiff's motion to dismiss, in other words, is moot."). Although KDW raised the issue of lack of capacity to sue at the appropriate time, this Court cannot dismiss a case for a nonexistent violation. If Plaintiffs had not obtained

7

the appropriate license during the pendency of this proceeding, this Court may have dismissed the instant action.

This Court's decision not to dismiss is in line with the holding of *Hogan*. The decision in *Hogan* does not require or even explicitly grant a court the authority to dismiss a case if a party obtains a license during the pendency of a proceeding. The *Hogan* court only states that "the failure of a corporation to procure the required license prior to maintaining an action violates [O.R.C. §] 1703.29(A) and *may* be a sufficient basis for a judicial remedy for that violation." 621 N.E.2d at 1258 (emphasis added). The court in *Hogan* is not using the term "may" to mean that a court must provide judicial remedy in all cases where an unlicensed corporation commences an action. If the court had found that a judicial remedy must be provided for every violation, it would have been required to dismiss Home's case—but it did not. Moreover, *Hogan* gives no insight as to whether dismissal of an action for failure to obtain a license is appropriate in instances where a corporation has obtained a license during the pendency of a procedure, *i.e.,* before the court has all the appropriate briefs to address dismissal. This Court may be permitted to dismiss the instant action, although *Hogan* does not expressly grant that permission, but this Court is not required to dismiss the instant action and declines to do so because Plaintiffs obtained a license during the pendency of this procedure.

Second, dismissal is inappropriate because it violates the purpose of O.R.C. § 1703. The purpose of O.R.C. § 1703.29(A) is not to deny foreign corporations access to Ohio courts, but to establish the penalties and procedures required for such corporations to acquire access. In interpreting O.R.C. §1703.29(A), Ohio courts have found that the commencement of an action by an unlicensed foreign corporation violates the statute: "The phrase 'maintain an action' may mean either the commencement of an action or the continuation of an action already begun.

Black's Law Dictionary (5Ed.Rev.1979) 859. Thus, the beginning or continuation of an action by an unlicensed corporation clearly violates [O.R.C. §] 1703.29(A)." *L & W Supply Co., Inc. v. Constr. One, Inc.*, No. 5-99-55 2000, WL 348990 at \*4 (quoting *Hogan*, 621 N.E.2d at 1257). A violation of O.R.C. § 1703.29(A), however, does not forever deprive a corporation from access to the courts. "The provision of the Foreign Corporations Law stating that no foreign corporation which should have obtained a license to do business in Ohio may maintain any action in any court until it has obtained such license does not permanently deny an unlicensed corporation access to Ohio courts but, instead, merely establishes the penalties and procedures required for such corporations to acquire such access." 13 Ohio Jur. 3d Business Relationships § 1057. Once a corporation obtains the proper license, "the continuation of the action no longer violate[s] [O.R.C.§] 1703.29(A) and its prior unlicensed status [is] no longer a basis for a judicial remedy." *Hogan*, 621 N.E.2d at 1258. Plaintiffs in this case have obtained the appropriate license and are no longer in violation of O.R.C. § 1703.29(A).

Third, the Court is directed to look to other jurisdictions when deciding how a state's Supreme Court would rule, and the majority of other state supreme courts that have analyzed nearly identical statutes have found that the statutes allow a corporation to cure its failure to obtain a license retroactively. In *Dieter Engineering Services, Inc.*, the West Virginia Supreme Court addressed the exact issue before this Court and found that "'the great majority of courts which have construed such statutes have concluded that a court may stay a suit commenced by a non-qualified foreign corporation until the foreign corporation obtains the requisite authority.'" 483 S.E.2d at 54 (quoting *Hudson Farms, Inc. v. McGrellis,* 620 A.2d 215, 221 (Del. 1993)); *see also Cost of Wisconsin, Inc. v. Shaw*, 357 S.E.2d 20, 21 (S.C. 1987) (affirming denial of motion to dismiss and noting that the "prevailing view is to allow qualification of a foreign corporation

9

after commencement of an action based on a concept of fairness"); *Video Eng'g Co., Inc. v. Foto-Video Elect., Inc.*, 154 S.E.2d 7, 8 (Va. 1967) (finding compliance with the requirements of the statute before judgment is sufficient to entitle the corporation to continue its prosecution"). The courts cited above held that once a corporation obtains a license and agrees to pay all fees, penalties and taxes, dismissal of a claim serves no purpose for two reasons: the purpose of the statute is not to deprive foreign corporations from accessing the courts; and if a court dismissed an action, a newly licensed party could simply refile its claim the following day. *See e.g.*, *Dieter Eng'g Serv., Inc.*, 483 S.E.2d at 55.

Similarly, dismissal of the instant action would serve no purpose. The licensing requirement in O.R.C. § 1703.29(A) serves to ensure that all appropriate fees and taxes are paid by foreign corporations doing business in Ohio. *See Hogan,* 621 N.E.2d at 1256 ("[O.R.C.§] 1703.29(A) does not permanently deny an unlicensed corporation access to Ohio courts; it merely establishes the penalties and procedures required for such corporations to acquire such access"); 13 Ohio Jur. 3d Business Relationships § 1057. Plaintiffs have obtained the proper license and have paid all appropriate fees. Although Plaintiffs violated O.R.C. § 1703.29(A) when they brought this suit, that violation has been remedied. Therefore, this Court will not deny Plaintiffs access to the courts.

Fourth, dismissal is inappropriate in an instance such as this because it would be a waste of judicial resources. *See Auto Driveway Co. v. Auto Logistics of Columbus*, 188 F.R.D. 262, 265 (S.D. Ohio 1999). In *Auto Driveway Co.*, this Court, "[i]n the interest of judicial economy," stayed an action until the plaintiff, an unlicensed foreign corporation, obtained the requisite licensing to maintain an action. 188 F.R.D. at 265; *see also Ferron*, 2007 WL 1792331 (finding the interest in judicial economy a compelling reason not to dismiss an action brought by an

unlicensed partnership); *cf. Trustar Funding v. Mruczynski*, No. 1:09CV01747-CAB, 2010 WL 1539759 (N.D. Ohio Mar. 30, 2010) *report and recommendation adopted*, 1:09CV1747, 2010 WL 1539750 (N.D. Ohio Apr. 16, 2010) ("[D]ismissal of an action brought by an unlicensed corporation is less equitable and more costly than simply allowing the corporation to register and possibly pay a fine before continuing with the action."). This Court concluded, "Plaintiff will eventually get its day in court, and dismissing the case now would merely prolong and add considerable costs to this litigation." *Auto Driveway Co.*, 188 F.R.D. at 265. If the Court were to dismiss this case, it would be without prejudice, and Plaintiffs—who are now properly licensed—could simply re-file their Complaint in this Court. To dismiss the case now would be a waste of the resources of this Court and all parties involved. Therefore, in the interest in judicial economy and because the issue of licensure is now moot, the Court will not dismiss Plaintiffs' Complaint.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss (Doc. 4).

**IT IS SO ORDERED**.

                                                     s/Algenon L. Marbley_____
                                                     Algenon L. Marbley
                                                     United States District Court Judge

**DATE**: October 31, 2011